# Eshbach's Estate.

*Trust and trustees—Creation of trust.*

Three things must concur to raise a trust. Sufficient words to create it, a definite subject, and a certain or ascertained object; and to these requisites may be added another, viz: that the terms of the trust should be sufficiently declared.

When a settlor is possessed of the legal title to the subject-matter of the settlement, he may create a valid trust thereof either by a declaration that he holds the property in trust, or by a transfer of the legal title to the property to a third party upon certain trusts. In other words, he may constitute either himself or another person the trustee. If he makes himself the trustee, no transfer of the subject-matter is necessary.

If the declaration of a trust be in writing, it is not essential as a general rule, that it should be in any particular form. It may be couched in any language which is sufficiently expressive of the intention to create a trust.

A father executed a writing in which he declared that he held $2,000 of his daughter's money, that she was to receive interest thereon during her life, and that at her death the principal should be paid to her children. The payment of one year's interest was indorsed upon the paper, and the paper was found amongst the father's effects after his death. *Held*, that the paper constituted the father a trustee for his daughter and her children.

*Trust and trustees—Active trust.*

Testator divided his estate into seven equal parts, and gave five parts to certain living children, and one part to the children of a deceased daughter, and as to the remaining part directed as follows: " One full seventh share or part thereof I give and bequeath to my hereinafter named executors and the survivor of them in trust, that they or he do and shall put and place the same out at interest and pay over the interest thereof from time to time, when and as the same shall be got in and received unto my daughter S. during the term of her natural life, and after her death the said principal shall go to her heirs and assigns forever." *Held*, that S. took an estate for life in trust, and not a fee simple estate.

*Trust and trustees—Legal and equitable estate—Rule in Shelley's Case.*

The rule in Shelley's Case does not operate where an equitable estate for life is followed by a legal estate in remainder.

Argued May 15, 1900. Appeals, Nos. 98 and 116, Jan. T., 1900, by Benjamin B. Eshbach et al., Exrs., and by Susannah Good, from decree of O. C. Lancaster Co., dismissing and sustaining exceptions to auditor's report, in the estate of John B. Eshbach, deceased. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MESTREZAT, JJ. Affirmed.

Exceptions to auditor's report.

The facts are fully stated in the opinion of the Supreme Court.

*Errors assigned* in No. 98, were in sustaining exceptions to auditor's report, and in No. 116, in dismissing exceptions to auditor's report.

*John E. Snyder*, for appellants in No. 116.—Of the things which must concur to raise a trust, we may concede in the present instance that there are sufficient words to create it; that there is a certain or ascertained object, and that the terms of the

trust are sufficiently declared, but there is not a definite subject because there is no property to which the trust attaches, and in this particular the case under consideration differs from that of Smith's Estate, 144 Pa. 428, and all other cases upon the same subject in Pennsylvania: Crawford's App., 61 Pa. 52.

The papers signed by John B. Eshbach, being without consideration, not under seal which would import a consideration, were void for want thereof, nudum pactum and equity would no more execute it than the law would make the breach of it, the subject of compensation: Kennedy v. Ware, 1 Pa. 445; Trough's Est., 75 Pa. 118; Carhart's App., 78 Pa. 100; Lenning's Est., 182 Pa. 485.

It was only his unexecuted intention, less than a mere promise, which was revoked by his death: Helfenstein's Est., 77 Pa. 328; Kern's Est., 171 Pa. 55; Scott v. Dickson, 108 Pa. 6; Waynesburg College's App., 111 Pa. 130; Bond v. Bunting, 78 Pa. 210; Campbell's Est., 7 Pa. 100; Smith's Est., 144 Pa. 428; Scott v. Lauman, 104 Pa. 593; Walsh's App., 122 Pa. 177; Albert v. Ziegler, 29 Pa. 50; Zimmerman v. Streeper, 75 Pa. 147; Long's App., 86 Pa. 196.

*H. Frank Eshleman,* with him *William Leaman,* for appellant in No. 98.—The will did not create a separate use trust: Hays v. Leonard, 155 Pa. 474; Carson v. Fuhs, 131 Pa. 256; Ringe v. Kellner, 99 Pa. 460; Duffield's App., 168 Pa. 171; Sharpless's Est., 151 Pa. 214; Richardson v. Aiken, 104 Pa. 567; Morrison v. Dollar Savings Bank, 36 Leg. Int. 215.

Neither is it a "spendthrift trust": King's Est., 147 Pa. 410; Kuntzleman's Est., 136 Pa. 142; Rodrigue's App., 22 W. N. C. 358; Smeltzer v. Goslee, 172 Pa. 298; Yerkes's App., 2 Chester Co. Rep. 410; Bristor v. Tasker, 135 Pa. 110; Rife v. Geyer, 59 Pa. 393; Fetherman's Est., 181 Pa. 349; Carson v. Fuhs, 131 Pa. 256; Geiger's Est., 20 W. N. C. 114.

The direction to perform active duties will not prevent the law from executing a trust if there are no objects to be subserved, especially if those duties are largely ministerial: Keyser's App., 57 Pa. 236; Kinsel v. Ramey, 87 Pa. 248; Sharpless's Est., 151 Pa. 214; Ogden's App., 70 Pa. 501; Rea v. Girard Life Insurance, etc., Co., 16 W. N. C. 48; McConnell v. Wright, 150 Pa. 275; Potts v. Kline, 174 Pa. 513.

It is presumed that the testator meant to deal equally with his children: Patterson's App., 128 Pa. 269.

It is an old rule of law that a gift of the entire beneficial income of a fund carries the fund: Ritter's App., 190 Pa. 102; Chamberlain v. Maynes, 180 Pa. 39; Cressler's Est., 161 Pa. 427; Kline's Est., 117 Pa. 139.

*H. Frank Eshleman*, with him *Wm. Leaman*, for appellee in No. 116.

*John E. Snyder*, for appellee in No. 98.—The trust is an active one: Dodson v. Ball, 60 Pa. 492; Kuntzleman's Estate, 136 Pa. 142; Barnett's Appeal, 46 Pa. 392; Wallace v. Denig, 152 Pa. 251; Livezey's Appeal, 106 Pa. 201; Goehring's Appeal, 81* Pa. 283; Earp's Appeal, 75 Pa. 119; Bacon's Appeal, 57 Pa. 504; Wickham v. Berry, 55 Pa. 70; Osborne v. Soley, 81* Pa. 312; Lightner's Appeal, 11 W. N. C. 181; Eley's Appeal, 103 Pa. 300; Ogden's App., 70 Pa. 501; Stambaug's Est., 135 Pa. 585.

Where the trust is not active, the legal estate will remain in the trustee so long as it is necessary to preserve the estate itself, as in the case of a trust for a married woman: Dodson v. Ball, 60 Pa. 496; Little v. Wilcox, 119 Pa. 439; Carson v. Fuhs, 131 Pa. 256; Stambaugh's Est., 135 Pa. 585; Mehaffey's Est., 139 Pa. 283.

The trust will continue so long as the cestui que trust continues covert: Megargee v. Naglee, 64 Pa. 216; Kuntzleman's Est., 136 Pa. 142; Shalters v. Ladd, 141 Pa. 349; Koenig's App., 57 Pa. 352; People's Savings Bank v. Denig, 131 Pa. 241.

The quality of the estate for life being different from that of the remainder, the two did not coalesce, and under the rule in Shelley's Case constitute an estate tail enlarged to a fee: Little v. Wilcox, 119 Pa. 439; Bacon's App., 57 Pa. 504; Stambaugh's Est., 135 Pa. 585; Hemphill's Est., 180 Pa. 95; Eley's App., 103 Pa. 300.

OPINION BY MR. JUSTICE MESTREZAT, July 11, 1900:

These appeals are from the same decree and may be considered together.

The papers signed by John B. Eshbach and dated respectively April 14, 1897, and April 1, 1898, did not create an indebtedness, nor were they evidence of a gift of the sums therein named.  In each, Eshbach declares that he holds $2,000 of his daughter's money, that she is to receive interest thereon during her life, and that, at her death, the principal shall be paid to her children.  Both papers were written by Eshbach, and at his death were found among his other papers.  On the one of earlier date was indorsed in Eshbach's handwriting, the payment of one year's interest.  The papers clearly constituted John B. Eshbach a trustee for his daughter and her children.  " Three things, it has been said, must concur to raise a trust, sufficient words to create it, a definite subject, and a certain or ascertained object; and to these requisites may be added another, viz: that the terms of the trust should be sufficiently declared : " Bispham's Eq. 109.  Mr. Bispham further says (p. 115) : " When a settlor is possessed of the legal title to the subject-matter of the settlement, he may create a valid trust thereof, either by a declaration that he holds the property in trust, or by a transfer of the legal title to the property to a third party upon certain trusts.  In other words, he may constitute either himself or another person the trustee.  If he makes himself the trustee, no transfer of the subject-matter is necessary."   In Smith's Estate, 144 Pa. 436, Justice CLARK, speaking for the court, says : " If the declaration (of a trust) be in writing, it is not essential, as a general rule, that it should be in any particular form.   It may be couched in any language which is sufficiently expressive of the intention to create a trust."

All these requisites of a valid trust are found in the language used in the papers under consideration.  The settlor declares absolutely that the fund is the money of Susannah Good and that he holds it for the use of the parties named in the declaration of trust.  He thus relinquishes his ownership of, or dominion over, the money, and constitutes himself a trustee, clearly and explicitly of the fund.  This language is as effective to create a trustee as if Eshbach had declared he had placed the money in the hands of another than himself as trustee. The purpose or object of the trust is manifest and unequivocally expressed.  The fund is to be held by the trustee during the life of Susannah Good, who is to receive the interest thereon

during that time, and at her death the principal is to be paid by the trustee to her children. There is, therefore, nothing uncertain or equivocal about the object of the trust. In fact it is conceded by the learned counsel of the executors that there are sufficient words to create a trust, that there is a certain or ascertained object and that the terms of the trust are sufficiently declared. It is, however, denied that there is a definite subject expressed in the declaration of trust, but this position is not tenable. If the $4,000 had been transferred to another party who had been named as trustee, instead of the settlor declaring himself to be a trustee and retaining the fund as such, we presume no question would have been raised as to the subject being sufficiently definite. A third party as trustee could not have denied that he was trustee for the fund although he held it as money and not as any particular fund, or as having been received by him from a particular fund. He would be required to account for the money and its proceeds or income, but not necessarily for the identical money received by him from the settlor. Eshbach, having made himself the trustee, occupies, in this respect, the same position, and holds the fund the same as another trustee would hold it. His declaration in writing that he held $4,000 of Susannah Good's money was a distinct setting apart of a specific sum for the purposes of the trust, and this made the subject of the trust sufficiently definite. The auditor was, therefore, correct in holding that John B. Eshbach, by the papers of April 14, 1897, and April 1, 1898, constituted himself a trustee for his daughter and her children for the sums therein named.

The solution of the other question arising in this case depends on the construction of the last clause of the will of John B. Eshbach, deceased. The testator directs in his will that the residue of his estate be converted into money, and that the fund be divided into seven equal parts. He then bequeaths one part thereof to each of his five children and to the children of his deceased daughter, Mary Whitmer, and to their heirs and assigns. The other one-seventh part he disposes of in the last clause of his will as follows : " One full seventh share or part thereof I give and bequeath to my hereinafter named executors and the survivor of them in trust, that they or he do and shall put and place the same out at interest and pay over the interest thereof from time to time, when and as the same shall be

got in and received unto my daughter Susannah Good, wife of Josiah Good, during the term of her natural life ; and after her death the said principal shall go to her heirs and assigns forever."

The auditor held that Susannah Good took the one seventh of the residuary estate absolutely and awarded the same to her in the distribution of the estate. On exceptions to his report by executors of decedent, the court reversed the decision of the auditor and directed that the fund awarded by him to Mrs. Good be held by said executors under the terms of the testator's will. The learned judge in his opinion says : " As we view this trust as an active trust, at least during the coverture of Susannah Good, we are of opinion that the auditor, instead of awarding the sum of $8,296.57 to Susannah Good, wife of Josiah Good, should have awarded that sum to testator's executors to be held by them under the terms of his will."

The language used by the testator in his will is plain and we think his intention is clearly apparent. He gave to each of his five children and the children of his deceased child the one-seventh share of the residue of his estate absolutely. He then in language distinct and unequivocal bequeaths the other one-seventh part thereof to his executors in trust, that they shall invest it and pay the interest arising thereon to his daughter, Susannah Good, during her natural life. It is, therefore, manifest that he intended to make a distinction between Mrs. Good and his other children so far as the distribution of his estate was concerned. He gave the corpus of the fund to his other children but he did not intend that Mrs. Good should have any part of the principal, but only the interest thereon, during her life. This is clearly and distinctly stated by the testator and his intention cannot, therefore, be misunderstood. We must presume he had a good reason for limiting his daughter's interest in the estate to the interest on the fund instead of bequeathing to her the principal. In Stambaugh's Estate, 135 Pa. 596, Chief Justice PAXSON, delivering the opinion of the court, says : " The latter (testator) had certainly some object in creating this trust for Moses. What was it ? We do not think the answer difficult. The mere fact of the giving only of the income, and the interposition of a trustee, implies distrust as to his son." This remark is applicable to the bequest under con-

sideration. The testator not only doubted the ability of Mrs. Good to manage the corpus of the fund so as to give her the benefit of it during her life, but also desired the fund itself, after her use of it for life, to go to and be enjoyed by others. He, therefore, placed it in the hands of trustees for these purposes.

In Stambaugh's Estate, supra, this court held that a trust to invest money, collect the interest and pay it over to a cestui que trust during life, and at his death to pay the principal to another, is an active trust and invests the legal title to the fund in the trustee, during the life of the cestui que trust. The trust created by John B. Eshbach in his executors was an active and continuing one, not only during the coverture of Susannah Good but for her life. It was not the intention of the testator to create the trust merely to protect the fund from his daughter's husband. We do not think the language of the will is sufficient to make the trust a married woman's trust. It was more extensive and was to exist during the life of the cestui que trust. Mrs. Good was not given the fund itself for her life but it was bequeathed directly to the executors during that time. Upon them was imposed the duty of placing it at interest, of collecting the interest and paying it to Mrs. Good for her life. She had no right to the possession or control of the principal and could not invest it and collect the interest. The executors were given possession of the fund by the will for the purposes of the trust. In this distribution it is absolutely necessary that it be awarded to the executors if the intention and purposes of the testator, clearly expressed in the will, are to be carried out. As said by the present chief justice, in Harbster's Estate, 133 Pa. 357, " we could not make a decree giving it to her absolutely, without striking down entirely the expressed and peremptory provisions of the will."

As has been observed, the only duty imposed on the trustee was not the receiving and paying over the interest of the principal sum to the cestui que trust. They were given the fund itself, and required to "place the same out at interest." The executors were, therefore, directed in express terms to invest it and, of course, to reinvest it as often as it became necessary during the life of Mrs. Good. This imposed active duties upon them and involved the exercise of discretion and judgment in the care and management of the fund.

There is another reason why this is an active and continuing trust during the life of Mrs. Good. The estate in remainder was a legal estate. It was vested in the heirs of Mrs. Good. Her estate, however, was purely equitable. The rule in Shelley's Case was not applicable and the two estates could not coalesce and thus give the fund to Mrs. Good absolutely: Little v. Wilcox, 119 Pa. 439; Hemphill's Estate, 180 Pa. 95. It, therefore, became necessary to continue the trust to protect the remaindermen.

It is strongly urged, however, by counsel for Mrs. Good, that there is no limitation over after the bequest to her for life of the income of the fund, and that a limitation of the remainder to " heirs and assigns forever " shows an absence of a gift over. His industry in collating the numerous authorities in this state on the subject is commendable and has aided greatly in the consideration of the question involved. We fail, however, to see that he has cited any case that rules the one in hand adversely to the contention of the appellee. The learned court below has relieved us of the necessity of a reference to the authorities on this subject by citing and commenting on them in the opinion filed by him. As we have already said, the corpus of the estate was given to the trustees who had active duties to perform in its investment and management. The cestui que trust was to receive only the interest on the fund for life. Her heirs or the remaindermen were to have the principal sum at her death. The language of the will clearly discloses that it was the purpose of the testator that Mrs. Good should have only the interest on the fund and that the principal should be preserved for her heirs. There is no reason why his intention as to the disposition of his property should not be carried into effect. The authorities cited by the counsel for the appellant when applied to the language of the will of John B. Eshbach do not conflict with the conclusion at which we have arrived.

We are of opinion that the corpus of the fund in dispute should be awarded to the executors of the decedent, to be held by them during the life of Susannah Good, under the terms of testator's will. This being the effect of the decree of the court below it will be affirmed.

The assignments of error are overruled and dismissed, and the decree of the court is affirmed.