## Perkins Estate

*Wendell E. Warner* and *Lutz, Fronefield, Warner & Bryant,* for accountant.

*Joseph D. Calhoun, Guy W. Davis, MacCoy, Evans & Lewis, John Y. Mace, D. Barry Gibbons, James N. Robertson* and *Martin F. Hatch,* for claimants.

VAN RODEN, P. J., February 15, 1961. — By the statement of proposed distribution, as well as by objections filed thereto, the court is required to determine the meaning of the language used by testatrix in item seventh of her will.

The portion of the will for our consideration reads as follows:

"Seventh: Upon my death, or as soon thereafter as is convenient, I direct that my executor sell my house and all of the contents therein, the proceeds of the sale

of the house and contents to be distributed in accordance with the following instructions: . . ."

Following the introductory paragraph, there are seven separate paragraphs, each containing a bequest to a named beneficiary in varying amounts. The total of these seven bequests is $12,000. All of the legatees are charities.

The executor sold the house and contents and realized the sum of about $25,650 as a result.

Counsel for these beneficiaries contends that the entire net proceeds are distributable to the seven charities named in item seventh of the will "in the proportion which the dollar amount designated for each bears to the total net proceeds obtained."

The reasoning in support of this position is that item seventh is complete in itself, and therefore the respective amounts of the seven several bequests "were descriptive only and merely fixed the proportions which the charities should receive, based upon the stated total of $12,000 set up in the will."

He also contributes an additional reason for his conclusion, to wit, if the sum realized had been less than $12,000, each of said beneficiaries would have had its share proportionately reduced, and, as the amount was in excess of $12,000, each share should be proportionately increased.

The basis of this reasoning is that the phrase directing the proceeds of the sale shall "be distributed in accordance with the following instructions" relates exclusively to the "instructions" contained in item seventh. Quoting from his very able brief, counsel for the objectors states:

"Mrs. Perkins' will clearly indicates an intention to dispose of all of her property. Paragraph Seventh purports to dispose of all of the proceeds from the sale of her house and contents; and paragraph Eighth purports to dispose of everything else."

The court agrees that decedent's will "clearly indicates an intention to dispose of all of her property," but we do not agree that item seventh purports "to dispose of all of the proceeds from the sale of her house and contents."

The intention of testatrix must be gathered not only from the language used in creating the bequest but from the provisions of the will as a whole: March Estate, 357 Pa. 216 (1914).

It is not what this court thinks she might or would have said, or even what the court thinks she might have meant to say, but what is the clear meaning of her words.

Consideration of her will as a whole discloses the following uncontradicted facts.

Testatrix made her will on February 16, 1959. She lived in the house bequeathed and must have known at that time that the value of the house and the contents exceeded the $12,000 specifically bequeathed. As a matter of fact, the inventory filed less than a year from the date of her will contains an inventory value of the real estate itself in the amount of $24,000. Testatrix was a widow and left no children to survive her. She, therefore, in her will set up a scheme of charitable gifts. Prior to item seventh testatrix provided concerning her burial and her grave, made a bequest of $500 to her doctor, and gave some personal items to a friend of over 40 years. She provided in item sixth of her will for the use of a burial lot by a niece and the children or grandchildren of any member of her parents' family. Thus, after taking care of her direct personal interests, in item seventh she provides for the sale of her house and its contents and distributes in specific amounts certain sums of money from the fund created by that sale. It is obvious that she listed a total distribution of that fund in the amount of $12,000. She then proceeded to distribute the residue of the estate.

It is important to note that the value of the house and the contents equals approximately one half of her total assets. Therefore, when she limited the specific legacies under item seventh to a total of $12,000 she necessarily intended that the balance would go into the residue of the estate.

In Mulert Estate, 360 Pa. 356, the Supreme Court, by Justice Allen M. Stearne, ruled that an overplus in connection with an annuity clause of an estate was to be paid into the residue and that such excess was not to be distributed pro rata among the annuitants currently receiving annuities. At page 359, Justice Stearne stated:

"The intention of testator is the polar star in the construction of wills: Saver's Estate, 324 Pa. 349, 188 A. 141; Prime's Petition, 335 Pa. 218, 6 A. 2d 530. This intention is to be gathered from the whole will and is not limited to any particular clause: Williamson's Estate, 302 Pa. 462, 153 A. 765; MacMackin Estate, 356 Pa. 189, 51 A. 2d 689; March Estate, 357 Pa. 216, 53 A. 2d 606; Siple et ux. v. Greumelli, 357 Pa. 237, 53 A. 2d 607. Every will is in a sense unique and therefore precedents are of little value; Kirkpatrick's Estate, 280 Pa. 306, 124 A. 474; Brennan's Estate, 324 Pa. 410, 188 A. 160; Jackson's Estate, 337 Pa. 561, 12 A. 2d 338. Each will is its own best interpreter, and a construction of one is no certain guide as to the meaning of another: Bechtel v. Fetter, 267 Pa. 173, 111 A. 50; Williamson's Estate, supra; Emmerich Estate, 347 Pa. 307, 32 A. 2d 400."

Item seventh of the will refers to specific sums to the charities therein enumerated while the residuary clause, item eighth, refers to shares in the residue.

The language of the will is plain that under item seventh each beneficiary is given a specific sum of money and under item eighth each beneficiary is given "equal shares, share and share alike" of the "rest,

residue and remainder of my estate, both real and personal." The fund in which there is an excess was obviously created under testatrix' direction by the sale of the real estate and in the residuary clause she refers to the residue, real and personal.

The will itself, under item seventh, uses the phrase "in accordance with the following instructions" and item eighth is in fact a "following instruction."

Item eighth is in a real sense a subsequent instruction to the executor on the distribution of the fund. Item eighth follows item seventh. Item eighth contains a specific direction such as "in equal shares, share and share alike, among the following organizations: . . ." Furthermore, item ninth of the will gives the executor absolute power to sell the real estate for such prices as his judgment deems expedient "to the proper execution of the various gifts, bequests and devises hereinbefore set forth." Testatrix could not have been more specific in the use of language than that here used "in accordance with the *following* instructions."

Again, all arguments revolve around the principal one here made that it was testatrix' clear intent by a reading of the whole will that any surplus funds beyond the specific bequests made in item seventh should go to those who share in the residue. The beneficiaries under item seventh of the will are so protected that in the event there were no assets in the estate except a total of $12,000 from the sale of the house and the contents they would have a prior right to their amounts as specified from that fund and those who had prior legacies under prior provisions of the will could not take from that fund. See Torchiana's Estate, 292 Pa. 470 (1928).

If the decedent had intended the charities mentioned in item seventh to divide the entire proceeds of the sale, she could have said so in clear and affirmative language as the law requires.

See Johnson Estate, 80 D. & C. 23 (1952). The Orphans' court of Philadelphia in an opinion by Judge Lefever stated, at page 30:

"The contention for a pro rata distribution is rejected. There is no provision in the will suggesting such a contention. Had testator so intended, it would have been a simple matter for him so to provide. Instead, he merely stated that each of the four remaindermen should receive a specific amount, and said no more. The surplus fund is, therefore, not disposed of by the trust provision, and reverts by way of a resulting trust to testator's estate, whence it then passes by way of the residuary clause of his will to his widow, and now to her estate."

In Zoller Estate, 373 Pa. 451 (1953), the Pennsylvania Supreme Court in an opinion by Justice Allen M. Stearne ruled, at page 457:

"We agree with the majority of the court below that the unexpended portion of this fund is held by the trustees under a resulting trust for the benefit of the estate of testator, and consequently falls into the residue, constituting property not effectively disposed of: Bricker's Estate, 335 Pa. 300, 303, 6 A. 2d 905; Yeisley Estate, 358 Pa. 200, 56 A. 2d 205, and cases therein cited."

Reference is made to Page on Wills, sec. 993, at pages 94-5, where it is stated: "If provision is made . . . for paying legacies out of the proceeds, any surplus . . . passes under a residuary clause."

Counsel for the legatees refers to Paul Estate, 13 D. & C. 2d 350 (1957). This court respectfully declines to agree with the majority decision and prefers to follow the reasoning of the dissenting opinion of Judge Rahauser, at page 359 et seq.

For the reasons above set forth, the court holds that all of the objections to the statement of proposed distribution be and the same are hereby dismissed.

32

Accordingly, the court holds that the beneficiaries named in item seventh are entitled to receive only the amounts of said legacies respectively.

And further, the surplus received by the accountant from the proceeds of the sale of the house and contents thereof of decedent in excess of the sum of $12,000 shall pass over to and be included in the residuary estate and distributed accordingly.