## Sniderman Estate.

Argued September 29, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused February 23, 1973.

*Raymond L. Brennan,* for appellant.

*Daniel Shapira,* with him *G. Donald Gerlach,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE POMEROY, January 19, 1973:

The Pittsburgh National Bank, administrator *pendente lite* of the estate of Mayer Sniderman, petitioned the Orphans' Court Division of the Court of Common Pleas of Allegheny County to issue a citation against Raymond L. Brennan, Esquire, respondent (appellant here), and to require him to show cause why he should not be directed to pay to the estate of the late Mr. Sniderman a fee for legal services allegedly earned by Sniderman during his lifetime and collected by respondent after Sniderman's death. Respondent answered the citation on the merits, and a hearing was held on December 13, 1971. At that proceeding the court *sua sponte* raised the question of subject matter

jurisdiction of the Orphans' Court Division, it appearing from the evidence that the fee in question was in actuality unpaid monies in the hands of the client at the date of Sniderman's death, had never been in the hands of the personal representatives of the estate, and had been collected by the respondent directly from the client. Respondent replied that he doubted the "Orphans' Court had jurisdiction whatsoever", and the court then granted leave to file preliminary objections to the jurisdiction. Meantime, however, the hearing proceeded; both parties presented evidence and closed.

Respondent then filed preliminary objections to the jurisdiction of the Orphans' Court Division. These were denied after argument by a court *en banc*. In an opinion accompanying the order denying respondent's preliminary objections, the court *en banc*, although recognizing that the merits of the issue "may not be before us", stated that the Sniderman estate was entitled to a portion of the fee in question and, absent production of evidence showing a more accurate method of dividing the sum, suggested that an award of 2/3 to the estate and 1/3 to the respondent would be equitable. The matter was remanded to the auditing judge for further proceedings consistent with the opinion.[1]

On May 19, 1972 a hearing was held on remand for introduction of evidence as to the value of the services rendered by Sniderman and respondent Brennan respectively. The administrator indicated his willingness to accept the two-thirds—one-third division proposed in the opinion of the court *en banc*. The respondent, however, stated that in his opinion the Orphans' Court Division lacked jurisdiction and he declined to produce evidence as to the value of his services. The court therefore entered an order and decreed "that the fee be

---

[1] The opinion of the court *en banc* stated that "President Judge BOYLE dissents at this stage of the proceedings."

divided, one-third to Mr. Raymond L. Brennan and two-thirds to the Estate of Mayer Sniderman". From this order, and without filing exceptions, respondent appealed directly to this Court (No. 112 March Term, 1972).

The administrator then moved that the court enter a more definitive order and on May 26, 1972 yet another hearing was held with respondent present. An order of judgment was thereafter entered in favor of the estate of Sniderman in the amount of $1,277. From this order, and again without filing exceptions, respondent appealed directly to this Court (No. 117 March Term, 1972).

The administrator has filed a motion to quash both of respondent's appeals. We heard argument on that motion at the same time as argument on the merits. We now grant the administrator's motion and quash both appeals.

Section 401 of the Orphans' Court Act of 1951, August 10, 1951, P. L. 1163, art. IV, 20 P.S. §2080.401 provides as follows: "Any judge of an orphans' court, learned in the law, whether or not the court is separate and whether or not it consists of more than one judge, may hear and determine all matters of which the court has jurisdiction. His determination thereof shall be a final decree, *unless exceptions thereto are authorized by rule of court* or the decree discloses that it is not intended as such." (Emphasis added). Section 771 of the Orphans' Court Act of 1951, supra, 20 P.S. §2080.771, provides that "[a]ny party in interest who is aggrieved by a *final* order or decree of the orphans' court . . . may appeal therefrom . . . ." Section 7, Rule 1 of the Orphans' Court Rules prescribed by this Court, 20 P.S. (Orphans' Court Rules), states that—"[e]xceptions shall be filed at such place and time, shall be in such form, copies thereof served and disposition made

thereof *as local rules shall prescribe.*" (Emphasis added). It would follow that if a rule of the Orphans' Court Division of the Court of Common Pleas of Allegheny County *authorizes* exceptions to be taken from the decrees here in question, respondent's failure to file such exceptions before appealing to this Court will prove fatal.

Rule 13, section 9 (applicable to practice and procedure on citation) of the Rules of the Orphans' Court Division of the Court of Common Pleas of Allegheny County reads as follows: "Specific exceptions to any decree *may be filed* with the Clerk within ten days after entry . . . ." Rule 14, section 1 of the same Rules states that "[e]xceptions to any decree or order of the Court *shall* be filed within ten days."

The Orphans' Court Act thus defines as *not* final (and hence not appealable) an order or decree from which exceptions are *authorized* by rule of court. The rules prescribed by this Court leave the matter of exceptions to local court rules, and the rules of the lower court which heard this case clearly *authorize* exceptions from these orders. None having been taken, the appeals must be quashed. *Yeisley Estate,* 358 Pa. 200, 56 A. 2d 205 (1948); *Wagner's Estate,* 289 Pa. 361, 137 A. 616 (1927).[2]

---

[2] While this ruling is necessarily technical, there is no overriding equity presented by this record. The respondent appellant inquired at the hearing of May 26, 1972 whether the order then proposed was the type of order from which an appeal is taken. The following dialogue ensued between the auditing judge, Judge RAHAUSER, and the respondent: "THE COURT: No, it is not [an appealable order]. MR. BRENNAN: Well, your Honor, I have,—THE COURT: Now, just a moment. It's the order of an Auditing Judge. You file your exceptions to this order, it goes before the Court *en banc.* Therein, the order from the Court *en banc* is the final order from which you take an appeal. MR. BRENNAN: Well, what I'm trying to determine from this court at this time is whether or not the order you entered on the 19th of May, 1972 is a final order—in

138

**Appeals quashed; costs on appellant.**

other words I'm trying to determine—THE COURT: Mr. Brennan, I explained it to you. It's the type of order for which you take exceptions and it goes before the Court *en banc.* It's the final order of the Auditing Judge. It's not an order from which you take an appeal. Mr. Gerlach has asked me to make that final order in definitive terms, namely, a judgment of $1,277.00 with interest from the date hereof and it is so ordered—so granted." Although a practicing attorney, respondent for some reason chose to ignore both the advice of the judge and the rules of practice of the orphans' court division and of this court.